Good morning, your honors, Mr. Hoare, the police, the court. I'm Lynn Shepard and I'm appearing on behalf of DeMazzo Valdovinos. The first issue that I would like to address this morning is the third issue in my brief, the issue as to whether the district court was concerned in giving Mr. Valdovinos an additional two points for obstruction of justice. This stems from remarks that were allegedly made to two witnesses in this case. Going back over the record, I realized it may have been a little difficult for the court to follow because the remarks came into the record via stipulation of the parties. I think the best place to find those is in the government's supplemental excerpt of record. It's on page 15 of their amended sentencing memorandum. What we stipulated, too, is that the agents, if called, would testify that they were told by two individuals, one being David Graves, that he had been approached by a large Caucasian individual and told the individual had heard that Mr. Graves had agreed to testify, presumably referring to Mr. Valdovinos' case, and that he should keep his mouth shut. There was a second witness, Jeff Saunders, and a few days prior to trial, again, the agents would have testified that they were told by Mr. Saunders that he was approached by three Hispanic males who told him if he knew what was good for Mr. Valdovinos was punished for this conduct. Do you have any more information about the sequencing of that? The district court found that the information about there being called witnesses could only have come from Mr. Valdovinos. And as I looked at the record, it seemed that the threats that were stipulated were apparently made, occurred shortly after the government filed its witness list under seal. That's what I can discern from the record. Now, if one wanted to make the argument that somebody besides Mr. Valdovinos could have been the source of their testimony, I guess it was so argued that the witnesses themselves may have mentioned the fact to somebody that they were going to be called and that got out into the community. So there would be another source besides Mr. Valdovinos. What's the record as to whether the witnesses knew that they were going to be called and when they knew in relation to when these alleged statements were made? As to the witnesses themselves, Your Honor, there is not a record. I do not believe that Mr. Graves testified in the motion to suppress. There was a motion to suppress a number of months prior to the trial in this case, and at that motion, it's my recollection that the government called various witnesses. And I honestly can't remember if David Graves was one of them. I don't believe that Jeff Saunders was. There were a number of witnesses that were called on my client's behalf who came up and testified primarily in regards to the confidential informant in this case. The situation overall, Coos Bay is a fairly small community. The confidential informant was a woman. She had volunteered to go to work for the local narcotics team down there and had worked for them for a number of months. I think they did, too, what one of the agents referred to as a roundup of people who she had been involved with. So all these people and a number of people were charged and then were given concessions for cooperation by the government. There were, I believe, six witnesses who testified at the sentencing hearing. No, they actually testified at trial about other drug dealings. So people were routinely being called as witnesses. They were friends, associates, people who had been involved in the drug community down there previously and during the course of the motion to suppress hearing, the trial hearing, and the sentencing hearing. No, there's no information specifically in the record that these people had, about who people had talked to concerning their testimony. I don't think those issues would have been. My question was maybe I'm not quite understanding the answer. If the people in the community generally know that there's this hoopla around this confidential informant whose cover's now been blown and there's a lot of agitation, as the record seems to suggest, it's conceivable that, as I understand what you've said, that people might suspect somebody in that community might be called as a witness. But I understand that these were specific statements that if you know what's good for you, you better not show up at this trial. Is that a mistaken understanding of the record? What I stipulated, too, is that the agents have called, would have testified that they were told by Jeff Saunders that that statement was made to him. Okay. So if that's the case, that suggests, as the district court found, that they had been threatened specifically about being called as witnesses in this case, which goes beyond sort of general community awareness. The only way that those people who made the threats could have known they were going to be called as a witness would be, the district court found, from the defendants, knowing that these folks have been listed as witnesses, were in fact going to be called. The other source of the information would have been the witnesses, having been informed themselves by the government they were going to be called. And I still don't quite understand. When did those witnesses learn that they were prospective witnesses? I would assume a week or two prior to the trial date is when they would have learned. But knowing that... Because sometimes what happens on a witness list, at least in my experience, I don't know what happened here, lawyers will list witnesses that they intend to call. That doesn't mean they've talked to the witnesses and let the witnesses know that they're in fact being identified for, you know, proposed as witnesses for the trial. So is there any record evidence in this case that the witnesses were advised they were actually put forward on a list of potential witnesses by the government? No, Your Honor. The record is silent as to that. But just because there seems to be a presumption made that because they were being called in this case, that therefore anything that happened to them as a result of that is attributable to Mr. Valdivinos. And I think that's sort of the crux of my argument in this case. In other words, even if he were to say to someone, guess what, I found out you're going to be called against me, that doesn't necessarily mean that he was the one that proceeded to make a threat. Is that your argument? Well, that would be part of my argument, yes. The other part is there's just no linking of the people who, this large male Caucasian and these three Hispanic people with my client at all. I'd like to point out to the Court that my client received the low end of his guideline range, which was 360 months. If he had received the low end of the guideline range without this enhancement, it would have been 292 months. He, in essence, received over five and a half years for conduct that was totally unrelated. This is not based on the quantity of drugs for which he was charged. This was a totally uncharged conduct and unindicted no finding of guilty anywhere. This was simply done by the District Court on a preponderance of the evidence. And given the magnitude of that sentence, I would urge the Court, number one, that the standard applied for this enhancement should have been the higher standard of clearing convincing evidence as opposed to the lower standard, which the Court imposed in this case. With regard to the issue that was previously raised by Ms. Shepard, obstruction of justice in answer to your question, Your Honor, the witness list was filed under seal on June 18th. I believe the trial proceeded or commenced on June 25th, approximately one week later. In the record, there is no indication as to when witnesses were apprised. But the reason the witness list was filed under seal is because a number of witnesses had specifically requested that no one find out that they were going to testify as witnesses due to their fear of the defendant. Right. But the enhancement here is based expressly on the fact that the Court found the fact that the only source of information that these witnesses would be called had to be the defendant. And that doesn't seem correct if the witnesses themselves knew they were going to be called. There's no evidence to suggest that they didn't talk to anybody, their family, that somehow that information didn't get out through the witnesses. And given the district court finding, no matter what standard one talks about, to say that the sole source is the defendant, when there's no evidence that these folks were approached or talked to by the defendant or anybody on his behalf, and the witnesses themselves knew about it, and they are just as likely to have let it slip, even if they didn't intend to, seems problematical to me. I appreciate your concern. In this case, however, the record shows that the witness list was filed under seal. There is no indication that any witnesses were told prior to that time. Now, at the same time... Let me just stop there because this is what bothers me is that there's two steps to it. One, first the information has to get out that this person is a witness. And then there's a further connection that needs to be made that the defendant somehow was involved in the threat. That seems to me to be a separate step that the district court would have to find, apart from disclosure. To say that the defendant had to be the only source, with no disrespect to the government, on occasion as we know, there are accidental leaks, there are mistakes that come out of faith, but they happen. So, even on its face, I'm wondering what is the evidence to say that it had to come from the defendant, any more than from the government, just in the abstract? Excellent question. I'd point to two pieces of evidence, if you will, that also indicate a witness motivation to either disclose or conceal their participation as a witness. First in this case, the witnesses were concerned about their own safety, which is why it was specific to their testimony. They weren't called snitches or, hey, I heard you're a rat, but I heard you're going to testify. And if you know what's good for you, you won't. And if you consider the motivation of those very witnesses as to whether they would want anyone else to know in those circumstances that they were going to testify, their common motivation would be not to disclose that. I do acknowledge your concerns, but in terms of the circumstantial evidence in this case, the government proved, I believe, beyond a preponderance of the evidence, that these were done indirectly by the defendant or on behalf of the defendant, because they were specific to the testimony that he did not want these witnesses to provide. I guess one of the major reasons for the inference is the fact who else would have had the motive to do it? Precisely, Your Honor, and that's the underlying implication, if you will, of this argument, is that, first, we're representing that, to our knowledge, given the motivation of the witnesses to conceal or disclose their participation as witnesses, they certainly had no motivation to disclose that. Given the official records in the case, no one else knew that outside the prosecution or defense team until June 18th. And given the nature of the threats specific to their testimony at this trial, as opposed to merely being a snitch or a rat or somebody who's not in favor of the drug community, if you will, these were specific to their testimony at trial, all those factors circumstantially indicate that these threats were made on behalf of the defendant and indirectly came through him. If they were on his behalf, say a family member, but there's no evidence that he knew what's going on, would that be sufficient? I don't believe so, Your Honor. In this case, especially because they were filed under seal and only made known to the defense and prosecution team, the implication and the inference to be drawn is that it came from him. But that's where I get back now to the second step. Let's now say, because we do have to credit the government having filed it under seal to make protection, that it only could have come from him. Does that mean that the source of the threats could only have come from him? In order for others to find out who was going to testify, at some point it had to initially come from him. Right. And let's just say for talking purposes, we say it did come from him. In other words, he told these guys, I guess you're being called to testify, and that's all he said. Do we have any evidence then that would for sure link up the threat made by a third party that the source of that threat was Mr. Valdivinos? The two witnesses were told that they heard that he was going to testify. They had to hear from somebody that had knowledge, i.e. the defendant, and that if they knew what was good for them, they wouldn't testify. Again, it's circumstantial, Your Honor, but I suggest that evidence indicates that it did come from the defendant and these threats were made on his behalf. Was he in custody? He was, Your Honor. I have nothing further to provide. I believe my positions are well set forth in the brief. I have one question on the warrant issue, which is the nine-month interval between the last controlled by and then the squaring out of the warrant nine months later. It seems to me a little close to the margin, it seems, did the district judge in this case too, who had a judgment on it, but nine months, I mean, that seems a pretty long time to let things go by before you then jump into somebody's home. What's the rationale for that? I agree with your concern, and I should note that Judge Hogan, who was the district court judge reviewing the magistrate's decision in this case, was actually the magistrate in the Greeney decision, so he's not unfamiliar with the issues with regard to staleness. In this case, as the facts ultimately played out at trial, there was a long-term investigation in this case, and a lot of other people were being looked at in terms of their distribution during that nine-month interval, which was the reason for it, but the record shows that on the date the affidavit was obtained by the officer, the defendant had an identification card in his name at that address, the address out of which he distributed the drugs. He also had a telephone number listed in his name at that address, and perhaps more importantly, the agent indicated that his training and experience showed that drug traffickers or people in the business of distributing drugs commonly retain records of those distribution activities at their residence for extended periods of time, not just days or weeks, and in this case, I believe Judge Hogan summarized it appropriately in that he said it's marginal. It's a very close call, but in situations like this, you have to give deference to the judgment call, and it's a type of deference that should be provided to the magistrate in these circumstances. We want to encourage officers to go to an independent third-party magistrate. This was also a period of time, it's not in the record, that the Oregon State Supreme Court had issued the Gatti decision, so law enforcement officers weren't able to speak to prosecutors about Fourth Amendment advice, and especially in situations where they may not necessarily be able to communicate with attorneys and get that proper advice. As a society, we want to encourage them to go to the judiciary and have an independent third-party review, if you will, before they go forth and deal with somebody's Fourth Amendment rights. In this case, they did that. It's our position that Judge Hogan aptly summarized that it's a very close call, but in these circumstances and in this case, that deference should be provided to the magistrate. Thank you. Thank you. There are just two points that I would like to hit very, very briefly. Number one, the idea that Mr. Valdivinos was the only person who knew that these people were going to testify really isn't very viable. This case was not tried in a vacuum. I have two banker boxes sitting back in my office that constitute a substantial part of the police reports that were involved in this case. There were many people who had made statements, who'd been interviewed. I had investigators actively outworking this case. The government had investigators. There were many people that it could have been pure speculation that somebody thought you were involved in the drug community, you might be involved in this case. Who else would have had the motivation to threaten these witnesses in this trial? Potentially someone who Mr. Valdivinos was getting his drugs from. They may not have wanted either him to be squeezed further or their name to come out of trial. Other people who were in the community who had been part of this roundup, so-called, may not have wanted more information to come out about their involvement. And I think as is pointed out in the Jackson case, the case where the individual, the defendant wrote across the cooperation agreement, Fred so-and-so is a rat. There are a lot of people in these kind of communities and within drug cultures who just flat out don't like people who cooperate, who rat or who snitch. And someone could just have taken it upon themselves to come in and say, this isn't something you should be doing. Stay out of this. Thank you. Thank you. Thank counsel for arguments. The case of United States v. Valdivinos is submitted. The next case for argument this morning is United States v. Ramirez-Robles. Thank you.
judges: Hug, McKeown, Fisher